**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **KATHRYN NOR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **ARKAN ALRASHID, M.D., an individual,** ) | **Jury Trial Demanded** |
| **GI PARTNERS OF ILLINOIS, LLC., an** ) | |
| **Illinois limited liability company,** ) | |
| **NORTHSHORE CENTER FOR** ) | |
| **GASTROENTEROLOGY, S.C.,** ) | |
| **an Illinois corporation,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, Kathryn Nor, by and through her attorneys, complains of Defendants Arkan Alrashid, M.D., GI Partners of Illinois, LLC, and Northshore Center for Gastroenterology, S.C. as follows:

### Nature of the Action

Plaintiff brings this action against Dr. Arkan Alrashid, and two of the intertwined medical practice companies he both owns and controls as an officer, to recover for damages caused when he sexually assaulted her following a business meeting and for additional acts of sexual harassment and retaliation which ultimately resulted in the end of her employment.

### Jurisdiction

1.      Federal question jurisdiction is based upon 28 U.S.C. §1331, 28 U.S.C. §1343(a), and Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq*., and supplemental jurisdiction is based upon 28 U.S.C. §1367(a) and 775 ILCS 5/1-101, *et seq*. and 740 ILCS 82/1 *et seq.*

2.     Plaintiff has complied with all administrative prerequisites by filing a timely Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") against Arkan Alrashid, M.D. for which the IDHR has issued a finding of Substantial Evidence and issued a Notice of Right to Sue. Plaintiff also filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants GI Partners of Illinois, LLC and Northshore Center for Gastroenterology, S.C. for which she has received Notices of Right to Sue. Those Charges were cross filed with the IDHR which will, upon completion of its investigation, also issue Notices of Right to Sue.

### Venue

3.     This action properly lies in this district pursuant to 28 U.S.C. §1391 because the events giving rise to this claim occurred in this judicial district.

### Parties

4.     Defendant, ARKAN ALRASHID, M.D. (hereinafter "Defendant Alrashid") is a gastroenterologist living and working in Illinois, and at all times relevant hereto, was Plaintiff's supervisor and is a covered employer/agent under the Illinois Human Rights Act.

5.     Defendant Alrashid is both an owner and employee of Defendant GI Partners of Illinois, at all relevant times herein serving as its President.

6.     Defendant Alrashid is also both an owner and employee of Defendant Northshore Center for Gastroenterology, S.C., at all relevant times herein serving as its President.

7.     Defendant GI PARTNERS OF ILLINOIS, LLC (hereinafter "Defendant GI Partners" or "GI Partners") is an Illinois limited liability company operating its gastroenterology specialty care business principally from 1880 Winchester Road, Libertyville, Illinois.

8.     At all times relevant hereto, Defendant GI Partners employed more than fifteen (15) employees, was engaged in an industry affecting commerce, and was an employer covered under Title VII of the Civil Rights Act and the Illinois Human Rights Act.

9.     Defendant NORTHSHORE CENTER FOR GASTROENTEROLOGY, S.C., (hereinafter "Defendant Northshore" or "Northshore") is an Illinois corporation also operating its gastroenterology specialty care business principally from 1880 Winchester Road, Libertyville, Illinois.

10.     At all times relevant hereto, Northshore employed more than fifteen (15) employees, was engaged in an industry affecting commerce, and was an employer covered under Title VII of the Civil Rights Act and the Illinois Human Rights Act ("IHRA").

11.     Defendant Northshore is wholly owned by Defendant GI Partners and is a division of GI Partners.

12.     Plaintiff, KATHRYN NOR (hereinafter "Plaintiff") is a female citizen of the State of Wisconsin who performed work in the State of Illinois as an employee for Illinois employers within this judicial district.

### Facts

*Corporate Interrelatedness, Joint Ownership and Operations*
*Among the Corporate Defendants and Other Entities*

13.     Defendant GI Partners provides specialty gastroenterological medical care to patients.  Patients would be evaluated by GI Partners' doctors at one of its physician office locations, including at Defendant Northshore's physician office, which is located in the same building as Defendant GI Partners.

14.     If the physician determined that the patient needed an endoscopy or colonoscopy, the procedure was then scheduled to be performed across the street at Company A.

3

15.     Company A is an Illinois corporation that operated an endoscopy practice in Libertyville, Illinois, across the street from Defendants GI Partners and Northshore.

16.     Company A exclusively provided procedures for patients of Defendants GI Partners and Northshore.  Company A did not provide services for any individuals who were not patients of Defendants GI Partners or Northshore.

17.     Company A is not a party to this action.

18.     At all times relevant hereto, when undergoing any such procedures,  anesthesiology services that were needed for the procedures were provided by Company B.

19.     Company B is an Illinois limited liability company that operated an anesthesiology practice, also in Libertyville, Illinois, located principally out of the facility operated by Company A.

20.     Company B exclusively provided services for patients of Defendant GI Partners, which included patients of Defendant Northshore. Company B did not provide services for any individuals who were not patients of Defendant GI Partners.

21.     Company B is not a party to this action.

22.     When patients of Defendants GI Partners and Northshore needed endoscopy and anesthesia services to be performed at Company A, the scheduling for those services was done by Defendant Northshore office employees on a unified scheduling software system that was shared between all of the service-linked companies: Defendant GI Partners, Defendant Northshore, Company A, and Company B.

23.     At all times relevant hereto, Plaintiff served as Chief Executive Officer ("CEO") of Company A and as Interim CEO of Company B.

24.     Defendant Alrashid, together with three other physicians, jointly owned, operated, and controlled Company A with another corporate entity, Company C.

25.     Upon information and belief, the three physicians who co-own Company A with Defendant Alrashid are also physicians with whom he co-owns Defendant Northshore.

26.     Defendant GI Partners jointly owned, operated, and controlled Company B with Company C, with Defendant GI Partners being the majority owner.

27.     As CEO of Company A and Interim CEO of Company B, Plaintiff was accountable to and jointly employed by each of the individuals or corporate entities that shared ownership, operation, and control of Companies A and B.

28.     At all relevant times hereto, Defendant Alrashid, either individually or in connection with his other corporate ownerships, had an ownership interest in each of the corporate entities named above, all of whom acted in concert to serve a common set of patients who originated as patients of GI Partners, were seen at the Northshore Gastroenterology office, and who would then receive any needed procedures and anesthesiology services across the street at Company A and Company B (which companies shared a location). The endoscopies and colonoscopies performed at Company A were, in fact, performed by the physicians from Defendants GI Partners and Northshore.

*Defendant Alrashid's Past Medical License Suspension and Known Sexual Misconduct*

29.     From approximately 1997 through 2000, Defendant Alrashid practiced medicine in Wisconsin in the emergency department of a hospital.

30.     In or around February 2003, the Wisconsin Medical Examining Board and Department of Regulation and Licensing suspended Defendant Alrashid's medical license for one

(1) full year due to sexual misconduct perpetuated against an employee of the hospital, whom he also treated as a patient.

31.     Specifically, in or around July 2000, Defendant Alrashid administered medical care, including a pelvic exam, to a female employee of the hospital who was experiencing both physical and emotional distress.

32.     After the exam, Defendant Alrashid told the employee he did not want her driving, suggesting she may be drowsy from the medical care, and directed her to wait for him in the doctor's lounge and he would give her a ride home.

33.     Once in the doctor's lounge alone with her, however, Defendant Alrashid began sexually assaulted the employee and threatened her that unless she went along, he would breach her confidentiality as a patient.

34.     For the next several months, Defendant Alrashid continued to abuse his power over this employee to engage in unwanted sexual contact with her and did not stop until she reported him to the hospital.

35.     As a result of his sexual misconduct, Defendant Alrashid's contract with the hospital was terminated and he was suspended from the practice of medicine.

36.     Subsequently, Defendant Alrashid began working as a gastroenterologist for Defendant Northshore, and later Defendant GI Partners, both of which he also co-owns, as described above, and both of which were aware of his license suspension on account of the sexual misconduct.

37.     Neither Defendant GI Partners nor Defendant Northshore took any precautions to ensure that Defendant Alrashid did not continue to engage in acts of sexual misconduct against female employees, patients, or others he would encounter in connection with his employment.

6

38.     Defendant Alrashid then used his position of authority to commit acts of sexual harassment and/or sexual assault against female employees of each of these entities.

39.     Even  though employees reported his sexual misconduct, no action was taken by either Defendant GI Partners or Defendant Northshore to remedy Defendant Alrashid's pattern of sexual misconduct or to ensure that he would not harm any additional women.

40.     Defendants GI Partners and Northshore had a duty to female employees, patients, contractors, or others with whom it knew Defendant Alrashid would interact in his capacity as an officer and employee, and co-owner of the corporate Defendants and the other corporate entities with whom they engaged in joint operations.

41.     Defendants GI Partners and Northshore took no precautions to protect these females from Defendant Alrashid's predatory sexual behaviors and instead not only continued to employ Defendant Alrashid, but also continued to grow and expand the various business ventures in which they were engaged with Defendant Alrashid, thus, expanding his reach to even more vulnerable females over whom he was in a position of power.

*Defendant Alrashid Sexually Assaults Plaintiff*

42.     At all times relevant hereto, Defendant Alrashid, in addition to his ownership interest in each, served as the Medical Director to both Company A and Company B.

43.     Plaintiff began serving as CEO of Company A in or around June 2017 and was later also named Interim CEO of Company B, a role she remained in at all times relevant hereto.

44.     Defendant Alrashid was one of Plaintiff's supervisor.

45.     As Plaintiff's supervisor, Defendant Alrashid had control over and directed Plaintiff's employment, from interviewing her for the position, hiring her into the position, supervising her performance, and setting her salary.

7

46. Defendant Alrashid had final authority over hiring of other personnel at Company A as well, and Plaintiff would need his approval prior to making an offer to a candidate for employment.

47. As CEO, Plaintiff's performance evaluations were, in part, completed by the physicians from GI Partners and Northshore who would complete a section called, "Physician Satisfaction."

48. Plaintiff was rewarded for her outstanding performance by those physicians. Her most recent bonus check, as part of her overall compensation, was paid by Defendant GI Partners.

49. On the evening of February 12, 2019, Plaintiff was required to attend a business meeting with Defendant Alrashid at a steakhouse in Oakbrook, Illinois. The purpose of the business meeting was to develop business between Company B and another division of Defendant GI Partners.

50. Defendant Alrashid demanded that Plaintiff come to his house prior to the dinner so that he could drive her to the dinner. Plaintiff resisted and suggested they drive separately and she meet him at the restaurant, but Defendant Alrashid insisted they drive together, claiming this would allow them an opportunity to review the discussion points for the business meeting while in the car.

51. After the meeting concluded, when the others in attendance were leaving, Defendant Alrashid instructed Plaintiff to remain at the restaurant to discuss the meeting with him. Because he was both her boss and her ride, she had no other choice.

52. During this time, Defendant Alrashid began to sexually harass and assault Plaintiff by rubbing her legs, forcibly moving her chair close to him, and kissing her without her consent.

53. Plaintiff told Defendant Alrashid to stop and pushed him away.

8

54.     Defendant Alrashid laughed at Plaintiff and told her she "needed to chill."

55.     Defendant Alrashid's actions caused Plaintiff to fear for her safety in his presence.

56.     Eventually, Plaintiff persuaded Defendant Alrashid to leave the bar and drive her back to her car.

57.     After exiting the parking lot, however, Defendant Alrashid abruptly pulled the car to the side of the road, pinned Plaintiff down, and began to sexually assault her.

58.     After several moments, Plaintiff managed to push Defendant Alrashid off of her and convinced him to start driving again.

59.     Plaintiff remained fearful that Defendant Alrashid would physically harm her or escalate his assault on her.

60.     As he was driving, Defendant Alrashid, in fact, became even more aggressive, exposed his penis to Plaintiff, and then reached across the console and grabbed Plaintiff by her hair and sexually assaulted her through force, including by groping her, penetrating her with his fingers, and forcing her to perform sexual acts on him.

61.     Plaintiff repeatedly told Defendant Alrashid to stop.

62.     Defendant Alrashid refused to stop and responded to Plaintiff's pleas by telling her, "I own you."

63.     During the sexual assault, Plaintiff remained fearful that he would hurt her if she did not comply with his forceful commands.

64.     Plaintiff was also scared for her career if she did not comply with her supervisor's forceful commands during the sexual assault.

65.     Plaintiff reported the sexual assault to the Oakbrook Police Department the following day.

66.     Defendant Alrashid has since been arrested for these actions and criminally charged with Criminal Sexual Assault and Criminal Sexual Abuse.

67.     Plaintiff also sought medical attention and treatment from a mental health provider who treated her for post-traumatic stress and depression.

68.     After the sexual assault, Defendant Alrashid continued to sexually harass Plaintiff including on February 13, 2019, the following day, when he attempted to kiss Plaintiff at work without her consent.

*Defendants Retaliate Against Plaintiff for Reporting the Sexual Assault*

69.     When Plaintiff reported to work on February 13, 2019, and Defendant Alrashid continued to sexually harass and assault her, she realized she could not continue working for him did not feel safe continuing to report to work with him present.

70.     Plaintiff reported the sexual assault and sexual harassment to her other supervisors and requested a leave of absence.

71.     Defendant Alrashid remained the Medical Director and co-owner of Company A and co-owner of Defendants GI Partners and Northshore, and the patients of Defendants GI Partners and Northshore continued to be seen and treated at Companies A and B.

72.     While on medical leave for treatment of the trauma she suffered, Plaintiff was prohibited from coming to the property and was, in fact, locked out of the facility where Defendant Alrashid continued to work, and where the joint patients of Defendants GI Partners and Northshore continued to be treated.

73.     In or around June 2019, Plaintiff was released to return to work by her mental health provider with the restriction that she not be required to work with Defendant Alrashid.

74. Because Defendant Alrashid remained the Medical Director of the facility, because the facility continued to provide services exclusively to his and the other GI Partners and Northshore patients, and because Defendants were unwilling to have Defendant Alrashid stop treating patients at that facility, they chose instead to retaliate against Plaintiff who was then not permitted to return to her job.

75. In further retaliation, Plaintiff was rejected for employment opportunities she sought at alternate locations for which she was eminently qualified, but for which, upon information and belief, Defendant Alrashid influenced the decision to deny her those opportunities.

76. Ultimately, Plaintiff was not returned to active employment or provided any alternate employment opportunities but was instead placed on an indefinite leave of absence causing irreparable harm to her career.

77. Defendant Alrashid remained Medical Director of Company A through the fall of 2019 and remained President and co-owner of both Defendants GI Partners and Northshore, whose patients continued to be treated at Companies A and B.

78. No action was taken against Defendant Alrashid by Defendants GI Partners and Northshore in response to him sexually assaulting Plaintiff or in response to his prior sexual misconduct directed at other employees.

79. By employing and doing business with Defendant Alrashid, while knowing of his sexual misconduct, his license suspension on account of sexual misconduct, and learning of additional sexual misconduct reported to them by their employees while he was employed and they were doing business with him, and yet still allowing Defendant Alrashid to remain employed and continuing to engage in further business ventures and expansion with him, Defendants GI

11

Partners and Northshore encouraged and assisted his continued sexual misconduct, including against Plaintiff.

80.     Defendants' actions are in direct violation of Title VII of the Civil Rights Act, the Illinois Human Rights Act, the Illinois Gender Violence Act, and Illinois tort law. As a result of Defendants' unlawful conduct, Plaintiff has suffered lost wages and other benefits, emotional distress, embarrassment, humiliation, inconvenience, and other non-pecuniary losses.

81.     Plaintiff demands to exercise her right to a jury trial in this matter.

## COUNT I
## ASSAULT
### (Arkan Alrashid, M.D.)

82.     Plaintiff realleges paragraphs 1 through 81 as though fully set forth herein.

83.     By the conduct as alleged herein, Defendant Alrashid accosted Plaintiff and by his actions caused Plaintiff to be in great fear and apprehension of imminent harmful and offensive contact.

84.     Defendant Alrashid's improper actions were willful and deliberate.

85.     As a direct and proximate result of Defendant's actions, Plaintiff suffered injuries, including but not limited to extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Alrashid on Count I and that it:

a)     Award Plaintiff compensatory damages;
b)     Award Plaintiff emotional distress damages;
c)     Award Plaintiff punitive damages;
d)     Award Plaintiff court costs and disbursements; and
e)     Award Plaintiff any and all other relief as the Court deems just in the premises.

**COUNT II**
**BATTERY**
**(Arkan Alrashid, M.D.)**

86.     Plaintiff realleges paragraphs 1 through 81 as though fully set forth herein.

87.     By the conduct as alleged herein, Defendant Alrashid willfully and intentionally grabbed, touched, fondled, penetrated, and otherwise physically and sexually assaulted Plaintiff without her consent or authorization.

88.     Defendant Alrashid's improper actions were willful and deliberate.

89.     As a direct and proximate result of Defendant's actions, Plaintiff suffered injuries, including but not limited to extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Alrashid on Count II and that it:

a)     Award Plaintiff compensatory damages;
b)     Award Plaintiff emotional distress damages;
c)     Award Plaintiff punitive damages;
d)     Award Plaintiff court costs and disbursements; and
e)     Award Plaintiff any and all other relief as the Court deems just in the premises.

**COUNT III**
**ILLINOIS GENDER VIOLENCE ACT**
**(All Defendants)**

90.     Plaintiff realleges paragraphs 1 through 81 as though fully set forth herein.

91.     By the conduct as alleged herein, Defendant Alrashid violated the Illinois Gender Violence Act when he willfully and intentionally grabbed, touched, fondled, penetrated, and otherwise physically and sexually assaulted Plaintiff without her consent or authorization.

92.     Defendants GI Partners and Northshore violated the Illinois Gender Violence Act by encouraging or assisting Defendant Alrashid.

93.     Defendants GI Partners and Northshore had an affirmative duty to protect Plaintiff from foreseeable harms, including sexual assaults by Defendant Alrashid.

94.     Given what was known about Defendant Alrashid's past sexual assault of other employees, Defendants GI Partners and Northshore had an affirmative duty to control Defendant Alrashid and an affirmative duty to warn Plaintiff in a way that would have enabled her to avoid harm.

95.     Defendants GI Partners and Northshore failed to take any corrective measures to control Defendant Alrashid or to warn Plaintiff in any way that would have enabled her to avoid harm from him and instead invested him with increasing amounts of unsupervised authority, ultimately including over Plaintiff and her job, which facilitated his unrestrained access to demand she attend the out of office business meeting where he could force her to be alone with him and which gave him the opportunity he needed to sexually assault her.

96.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered injuries, including but not limited to extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against all Defendants on Count III and that it:

a)     Award Plaintiff compensatory damages;
b)     Award Plaintiff emotional distress damages;
c)     Award Plaintiff punitive damages;
d)     Award Plaintiff reasonable attorney's fees, costs, and disbursements; and
e)     Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT IV
## SEXUAL DISCRIMINATION AND HARASSMENT IN
## VIOLATION OF ILLINOIS HUMAN RIGHTS ACT
### (All Defendants)

97.　　Plaintiff realleges paragraphs 1 through 81 as though fully set forth herein.

98.　　The Illinois Human Rights Act ("IHRA") makes it unlawful for an employer, an employee, or any agent of an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

99.　　Physical or verbal unwelcome sexual conduct by an individual of a quid pro quo nature or that has the purpose or effect of creating an intimidating, hostile, or offensive work environment, is actionable under the Illinois Human Rights Act.

100.　　By their conduct as alleged herein, Defendants subjected Plaintiff to sexual discrimination and harassment in the workplace and a sexually hostile and offensive work environment.

101.　　Defendants failed to take proper preventative, corrective, or remedial action to protect Plaintiff from sexual discrimination and harassment or to remedy the discrimination and harassment she suffered.

102.　　Defendants' conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from sexual discrimination and harassment.

103.　　As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered injuries, including but not limited to extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against all Defendants on Count IV and that it:

a)    Declare that Defendants' conduct was in violation of the Illinois Human Rights Act;

b)    Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendants' unlawful conduct;

c)    Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendants' unlawful conduct;

d)    Award Plaintiff damages for emotional distress and compensatory damages;

e)    Award Plaintiff reasonable attorney's fees, costs, and disbursements;

f)    Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g)    Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

h)    Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT V
## RETALIATION IN VIOLATION OF ILLINOIS HUMAN RIGHTS ACT
### (All Defendants)

104.    Plaintiff realleges paragraphs 1 through 81 as though fully set forth herein.

105.    The Illinois Human Rights Act makes it unlawful for an employer, an employee, or any agent of an employer to discriminate against any employee because she has opposed any unlawful employment practice or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing pursuant to the Illinois Human Rights Act.

106.    By their conduct as alleged herein, Defendants retaliated against Plaintiff for exercising her rights under the Illinois Human Rights Act in opposing and reporting an unlawful employment practice.

107.     Defendants' conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible retaliatory conduct.

108.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered injuries, including but not limited to extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against all Defendants on Count V and that it:

a) Declare that Defendants' conduct was in violation of the Illinois Human Rights Act;

b) Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendants' unlawful conduct;

c) Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendants' unlawful conduct;

d) Award Plaintiff damages for emotional distress and compensatory damages;

e) Award Plaintiff reasonable attorney's fees, costs, and disbursements;

f) Enjoin Defendants and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g) Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent retaliation; and

h) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT VI
## SEXUAL DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII
### (Against Defendant GI Partners of Illinois, LLC and
### Defendant Northshore Center for Gastroenterology, S.C.)

109.    Plaintiff realleges paragraphs 1 through 81 as though fully set forth herein.

110.    Title VII of the Civil Rights Act of 1991, 42 U.S.C. §2000(e), et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

111.    Physical or verbal unwelcome sexual conduct by an individual of a quid pro quo nature or  that has the purpose or effect of creating an intimidating, hostile, or offensive work environment, is actionable under Title VII of the Civil Rights Act of 1991.

112.    Defendants failed to take proper preventive, corrective, or remedial action to protect Plaintiff from sexual discrimination and harassment or to remedy the discrimination and harassment she suffered.

113.    By its conduct as alleged herein, Defendants subjected Plaintiff to sexual discrimination and harassment in violation of Title VII of the Civil Rights Act of 1991.

114.    Defendants' conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from sexual discrimination and  harassment.

115.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered injuries, including but not limited to extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants GI Partners of Illinois, LLC and Northshore Center for Gastroenterology, S.C. on Count VI and that it:

a)   Declare that Defendants' conduct was in violation of Title VII of the Civil Rights Act as amended;

b)   Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendants' unlawful conduct;

c)   Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendants' unlawful conduct;

d)   Award Plaintiff damages for emotional distress and compensatory damages;

e)   Award Plaintiff punitive damages;

f)   Award Plaintiff reasonable attorney's fees, costs, and disbursements;

g)   Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

h)   Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

i)   Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT VII
## RETALIATION IN VIOLATION OF TITLE VII
### (Against Defendant GI Partners of Illinois, LLC and
### Defendant Northshore Center for Gastroenterology, S.C.)

116.   Plaintiff realleges paragraphs 1 through 81 as though fully set forth herein.

117.   Title VII of the Civil Rights Act of 1991, specifically 42 U.S.C. §2000(e)(3), makes it unlawful for an employer to discriminate against any employee because she has opposed any unlawful employment practice or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing pursuant to Title VII.

118.   By its conduct as alleged herein, Defendants discriminated and retaliated against Plaintiff for exercising her rights under Title VII and opposing and reporting an unlawful employment practice.

19

119.     Defendants' conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible retaliatory conduct.

120.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered injuries, including but not limited to extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants GI Partners of Illinois, LLC and Northshore Center for Gastroenterology, S.C. on Count VII and that it:

a)   Declare that Defendants' conduct was in violation of Title VII of the Civil Rights Act as amended;

b)   Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendants' unlawful conduct;

c)   Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendants' unlawful conduct;

d)   Award Plaintiff damages for emotional distress and compensatory damages;

e)   Award Plaintiff punitive damages;

f)   Award Plaintiff reasonable attorney's fees, costs, and disbursements;

g)   Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

h)   Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent retaliation; and

i)   Award Plaintiff any and all other relief as the Court deems just in the premises.

**COUNT VIII**
**INTERFERENCE WITH EMPLOYMENT OPPORTUNITIES**
**IN VIOLATION OF TITLE VII**
**(Against Defendant GI Partners of Illinois, LLC and**
**Defendant Northshore Center for Gastroenterology, S.C.)**

121.   Plaintiff realleges paragraphs 1 through 81 as though fully set forth herein.

122.   Title VII of the Civil Rights Act of 1991, as amended, makes it unlawful for a covered third-party employer to discriminatorily interfere with an individual's employment opportunities with another employer.

123.   By its conduct as alleged herein, Defendants discriminated and retaliated against Plaintiff for exercising her rights under Title VII, opposing and reporting an unlawful employment practice, and unjustifiably interfered with her employment relationships.

124.   Defendants' conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible interfering conduct.

125.   As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered injuries, including but not limited to extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants GI Partners of Illinois, LLC and Northshore Center for Gastroenterology, S.C. on Count VIII and that it:

a)   Declare that Defendants' conduct was in violation of Title VII of the Civil Rights Act as amended;

b)   Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendants' unlawful conduct;

c)   Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendants' unlawful conduct;

d)   Award Plaintiff damages for emotional distress and compensatory damages;

e)   Award Plaintiff punitive damages;

f)      Award Plaintiff reasonable attorney's fees, costs, and disbursements;

g)      Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

h)      Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent interference in violation of Title VII; and

i)      Award Plaintiff any and all other relief as the Court deems just in the premises.

### COUNT IX
### NEGLIGENT HIRING, RETENTION, AND SUPERVISION
**(Against Defendant GI Partners of Illinois, LLC and Defendant Northshore Center for Gastroenterology, S.C.)**

126.    Plaintiff realleges paragraphs 1 through 81 as though fully set forth herein.

127.    By their conduct as alleged herein, Defendants GI Partners and Northshore had actual or constructive notice, and knew or reasonably should have known, that Defendant Alrashid had a particular unfitness for his position within the companies so as to cause danger of harm to third persons.

128.    By their conduct as alleged herein, Defendants GI Partners and Northshore knew or reasonably should have known about Defendant Alrashid's particular unfitness at the time they retained him for his officer position within the companies.

129.    Additionally, Defendants GI Partners and Northshore had a duty to supervise its employees, including Defendant Alrashid, in order to protect other employees and third persons from harm.

130.    By their conduct as alleged herein, Defendants GI Partners and Northshore failed to adequately supervise Defendant Alrashid, even when Defendants knew or reasonably should

have known that he was engaging in conduct that could and did, in fact, cause harm and injury to others, including Plaintiff.

131.    Defendants acted recklessly and/or willfully and wantonly and otherwise demonstrated an utter indifference to, or conscious disregard for, Plaintiff's safety.

132.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered injuries, including but not limited to extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants GI Partners of Illinois, LLC and Northshore Center for Gastroenterology, S.C. on Count IX and that it:

a)    Award Plaintiff compensatory damages;
b)    Award Plaintiff emotional distress damages;
c)    Award Plaintiff punitive damages;
d)    Award Plaintiff court costs and disbursements; and
e)    Award Plaintiff any and all other relief as the Court deems just in the premises.


Respectfully submitted,


By:        s/ M. Megan O'Malley
            Attorney for the Plaintiff


M. Megan O'Malley
John P. Madden
Katherine D. Ellis
O'Malley & Madden, P.C.
542 So. Dearborn Street
Suite 660
Chicago, Illinois 60605
(312) 697-1382
ARDC No. 6243598
momalley@ompc-law.com