## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KATHRYN NOR,                           )
                                       )
                    Plaintiff,         )
                                       )
            v.                         )          20 C 7470
                                       )
ARKAN ALRASHID, M.D., an individual;   )
GI PARTNERS OF ILLINOIS, LLC, an       )
Illinois Limited Liability Company; and )
NORTHSHORE CENTER FOR                  )
GASTROENTEROLOGY, S.C., an Illinois    )
Corporation,                           )
                                       )
                    Defendants.        )


## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on Defendants GI Partners of Illinois, LLC ("GI Partners") and Northshore Center for Gastroenterology, S.C.'s ("Northshore") Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).[1] Also before the Court is Defendant Arkan Alrashid, M.D.'s Supplemental Motion to Dismiss under Rule 12(h)(3). For the reasons that follow, the Court denies GI Partners and Northshore's Motion and denies Dr. Alrashid's Motion.

---

[1] Defendant Alrashid joins in the Motion. Dkt. ## 37, 41.

## BACKGROUND

For the purposes of these Motions, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Nor's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

GI Partners is an Illinois limited liability company operating its gastroenterology specialty care business principally from 1880 Winchester Road, Libertyville, Illinois. Dkt. # 1, ¶ 7. Dr. Alrashid is both a partial owner and president of GI Partners. *Id.* ¶ 5. Northshore is an Illinois corporation operating its gastroenterology specialty care business principally from 1880 Winchester Road, Libertyville, Illinois. *Id.* ¶ 9. Northshore is wholly owned by GI Partners and is a division thereof. *Id.* ¶ 11. Dr. Alrashid is also the president of Northshore. *Id.* ¶ 6.

Company A is an Illinois corporation that operates an endoscopy practice in Libertyville, Illinois, across the street from GI Partner Defendants. *Id*. ¶ 15. Company A is owned by Dr. Alrashid, three other physicians, and Company C. *Id*. ¶ 24. Company B is an Illinois limited liability company that operated anesthesiology services out of the facility operated by Company A. *Id*. ¶ 19. Company B is jointly owned by GI Partners and Company C. *Id*. ¶ 26. Nor does not contend Dr. Alrashid had any ownership interest or control over Company C. *Id*.

GI Partners provides specialty gastroenterological medical care to patients who would be evaluated by GI Partners' doctors at one of its physician office locations,

including Northshore's office (a division of GI Partners). *Id*. ¶ 13. If the physician determines the patient needs an endoscopy or colonoscopy, the procedure is scheduled to be performed at Company A. *Id*. ¶ 14. When undergoing any such procedures, anesthesiology services are provided by Company B. *Id.* ¶ 18. When patients of GI Partners or Northshore need endoscopy and anesthesia services to be performed at Company A, the schedule for those services were done by Northshore on a unified scheduling software system. *Id*. ¶ 22. Company A and Company B exclusively provide services for patients of GI Partners, which includes Northshore patients. *Id*. ¶¶ 16, 20.

Nor contends that Dr. Alrashid, either individually or in connection with his other corporate ownerships, had an ownership interest in each of the corporate entities described above, "all of whom acted in concert to serve a common set of patients who originated as patients of GI Partners, were seen at the Northshore office, and who would then receive any needed procedures and anesthesiology services across the street at Company A and Company B." *Id*. ¶ 28. Nor was employed by Company A as CEO and by Company B as Interim CEO. *Id*. ¶ 23. Dr. Alrashid acted as the Medical Director to both Company A and Company B. *Id*. ¶ 42.

Nor says Dr. Alrashid was one of her supervisors at Company A and Company B and, in this role, Dr. Alrashid allegedly had control over and directed her employment, from interviewing her for the position, hiring her into the position, supervising her performance, and setting her salary. *Id*. ¶ 45.

On the evening of February 12, 2019, Plaintiff alleges she was required to attend a business meeting with Dr. Alrashid, her supervisor at Company A and Company B. *Id*. ¶ 49. Dr. Alrashid insisted they drive to the meeting together and, after the meeting concluded, instructed Nor to remain at the restaurant. *Id*. ¶¶ 50–51. Dr. Alrashid allegedly began to sexually harass Nor. *Id*. ¶ 52. Dr. Alrashid and Nor left the restaurant to drive home and, after exiting the parking lot, Nor says Dr. Alrashid abruptly pulled the car to the side of the road began to sexually assault her. *Id*. ¶ 57.

Nor reported the sexual assault and harassment to her supervisors at Company A and Company B and requested a leave of absence. *Id*. ¶ 71. While on medical leave, Nor was allegedly prohibited from coming to Company A and Company B's property and was locked out of those facilities. *Id.* ¶ 72. Nor contends "they" refused to permit her to return to work following her leave and rejected her from other employment opportunities. *Id*. ¶ 73. Ultimately, Nor was not returned to active employment at Company A or Company B or provided any alternate employment opportunities but was instead placed on an indefinite leave of absence. *Id*. ¶ 76.

Nor also alleges Dr. Alrashid has a history of sexual misconduct. For example, in or around February 2003, the Wisconsin Medical Examining Board and Department of Regulation and Licensing suspended Dr. Alrashid's medical license for one year due to sexual misconduct perpetrated against an employee of the hospital where he worked, whom he also treated as a patient. *Id.* ¶¶ 30–34. His contract with the hospital was also terminated. *Id.* ¶ 35.

4

Nor claims GI Partners and Northshore were aware of Dr. Alrashid's past license suspension and the reason for that suspension, yet took no precautions to ensure Dr. Alrashid did not continue to engage in similar acts of misconduct. *Id.* ¶¶ 36–37. Nor says Dr. Alrashid used his position of authority to commit acts of sexual harassment and/or sexual assault against female employees of each of these entities and, even though employees reported Dr. Alrashid's sexual misconduct, neither GI Partners nor Northshore took any action to remedy the pattern of misconduct or ensure Dr. Alrashid would not harm any additional women. *Id.* ¶¶ 38–39.

Against Dr. Alrashid only, Nor brings claims for assault and battery. Against GI Partners and Northshore only, Nor brings claims for sexual discrimination and harassment, retaliation, and interference with employment opportunities, all in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq*; and negligent hiring, retention, and supervision. Against all Defendants, Nor raises claims for violations of the Illinois Gender Violence Act ("IGVA"), 740 ILCS 82/1 *et seq.*; and claims for sexual discrimination and harassment and retaliation in violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* GI Partners and Northshore, joined by Dr. Alrashid, move to dismiss Nor's claims under Rules 12(b)(6) and 12(b)(7). Dr. Alrashid separately moves to dismiss Nor's claims against him for lack of subject matter jurisdiction.

## LEGAL STANDARD

Rule 12(b)(7) authorizes the dismissal of a lawsuit if a plaintiff has failed to join a necessary and indispensable party under Rule 19.  Fed. R. Civ. P. 12(b)(7).  "When evaluating a Rule 12(b)(7) motion, the Court accepts all well-pleaded allegations in the complaint as true and may consider extrinsic evidence." *BCBSM, Inc. v. Walgreen Co.*, 2021 WL 77233, at *3 (N.D. Ill. 2021) (citing *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001)).  "Dismissal for failure to join a party 'is not the preferred outcome under the Rules.'"  *Id.* (quoting *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 634 (7th Cir. 2009)).  "In a 12(b)(7) motion, the movant bears the burden of demonstrating that the absent party is necessary and indispensable." *Id.*

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 878 (7th Cir. 2012).  The Court accepts as true well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the

grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). In determining whether subject matter jurisdiction exists, the court accepts all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in the non-movant's favor. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). "Where evidence pertinent to subject matter jurisdiction has been submitted, however, 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Id.* (quoting *United Transp. Union* v. *Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)) (internal citations omitted). Under Rule 12(h)(3), if at any time a court determines that subject matter jurisdiction does not exist, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

## DISCUSSION

Defendants move for dismissal under Rule 12(b)(7) because Nor did not join Company A and Company B, which Defendants argue are necessary parties under Rule 19. Defendants additionally move for dismissal under Rule 12(b)(6) for failure to state a claim. In so moving, Defendants argue Nor cannot maintain a cause of action under the IGVA against a corporate defendant; and Nor failed to allege an employment relationship. Defendants further contend Nor failed to state a negligent hiring, retention, supervision claim because she failed to plead and cannot prove proximate cause. Dr. Alrashid additionally moves to dismiss the claims against him for lack of subject matter jurisdiction under Rule 12(h)(3). We begin with the Rule 12(b)(7) motion.

### I. Motion to Dismiss for Failure to Join a Necessary Party

Defendants first argue the Court should dismiss the suit because Nor failed to join Company A and Company B, purportedly indispensable parties to this action. "The purpose of Rule 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Askew*, 568 F.3d at 634. In analyzing a Rule 12(b)(7) motion, the Court first must determine whether a party is necessary under Rule 19(a). *Id*. at 635; *Davis*, 268 F.3d at 481 (citing *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)). A party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If absent parties meet this criteria, "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). The term "complete relief" refers solely to whether the relief between the persons already parties to the case is possible without the addition of the absent person. *Davis*, 268 F.3d at 481.

If the court determines the party should be joined but cannot be for jurisdictional reasons, then the court must determine whether the party is indispensable; that is, whether the litigation can proceed in that party's absence under Rule 19(b). *See Askew*, 568 F.3d at 635; *Davis*, 268 F.3d at 481. So, we must first consider whether complete relief may be accorded among the existing parties without joinder of Company A and Company B.

Nor asserts the participation of Company A and Company B is not necessary for her to obtain complete relief, as the current Defendants can satisfy all elements of her requested relief. The relief Nor seeks includes monetary damages as well as specific injunctive relief, including: (1) enjoining Defendants and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice; and (2) enjoining Defendants and all officers,

9

agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent retaliation. We see no reason why this relief cannot be afforded absent joinder of Company A and Company B.

Next, we consider whether Company A's and Company B's ability to protect their own interests would be impaired. Defendants argue Nor's discrimination and retaliation claims are premised on actions taken by Company A and Company B, and contend the allegations levied against them "would directly implicate Company A and Company B." Thus, Defendants say, those companies should have the opportunity to defend themselves.[2] Defendants further argue that, to the extent Nor could prove a joint employer theory, in order to prove any claim for retaliation or discrimination against the existing corporate Defendants, the Court would necessarily have to consider whether the Actions of Company A and Company B constitute retaliatory and/or discriminatory conduct.

But, if Nor is correct about her joint employer theory, the potential liabilities of Defendants and Company A and Company B are independent of each other; Nor may prove that one *or* all entities are liable. If Company A and Company B are not joined in this action and Nor sues either company in a subsequent action, Nor would still need to establish Company A and/or Company B's liability independent of her proof of

---

[2] Nor states she filed charges with the EEOC against Company A, who was given the opportunity to defend its interests there and did so in a way that the dispute was resolved.

Defendants' liability here. Company A and Company B are not necessary parties under either of the two prongs of Rule 19(a). Defendants' Rule 12(b)(7) Motion to Dismiss is denied.

## II.    Motion to Dismiss under Rule 12(b)(6)

Next, we turn to Defendants' arguments for dismissal based on failure to state a claim. Defendants argue Nor cannot maintain a cause of action under the IGVA against a corporate defendant; and Nor failed to allege an employment relationship necessary to maintain her Title VII and IHRA claims against them. Defendants further contend Nor failed to state a negligent hiring, retention, supervision claim because she failed to plead and cannot prove proximate cause. We address each argument in turn.

### A. Count III: IGVA Claim

Defendants argue the Court must dismiss Nor's IGVA claim because neither Northshore nor GI Partners is a "person" who can be sued under the IGVA. The statute provides:

> Any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this Section, "perpetrating" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence.

740 ILCS 82/10.

Defendants cite a slew of cases from this District and others which have concluded the IGVA does not apply to corporations, *see Robinson v. FedEx Ground*

*Package Sys., Inc.*, 2020 WL 586866, at *3 (N.D. Ill. 2020) (collecting cases), but ignore courts who have found differently, *see Solinski v. Higher Learning Comm'n*, 2021 WL 1293841, at *4 (N.D. Ill. 2021) (collecting cases). While the Illinois Supreme Court has yet to address this issue, the Illinois Appellate Court has. In *Gasic v. Marquette Management, Inc.*, the court held "[u]nder some circumstances, a legal entity, such as a corporation, can act 'personally' for purposes of giving rise to civil liability under the Act." 2019 IL App (3d) 170756, ¶ 19. Because the Illinois Appellate Court concluded that a corporation can be liable under IGVA under certain circumstances, the Court declines to dismiss Count III at this juncture. *See Solinski*, 2021 WL 1293841, at *4; *Boeving v. City of Collinsville, Ill.*, 2021 WL 5906087, at *3 (S.D. Ill. 2021). Defendants' Motion to Dismiss Count III is denied.

### B. Employment Relationship: Title VII and IHRA Claims

Defendants next challenge Nor's Title VII and IHRA claims against them, arguing Nor fails to allege an employment relationship between Nor and GI Partners and Northshore. Nor claims she has sufficiently alleged that Defendants were her joint employers for purposes of the Title VII claims, and further asserts an employment relationship is not required for retaliation claims under the IHRA.

A plaintiff may pursue a Title VII claim against an entity under the theory that the entity was one of her joint employers. *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015). In considering whether an entity is a joint employer for purposes of Title VII liability, courts consider five factors: "(1) the extent of the

[entity's] control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the [entity's] responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015) (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991)). As the Seventh Circuit has explained, these five factors help structure the court's determination of "whether the putative employer exercised sufficient control, and whether the 'economic realities' are such that the putative employer can be held liable under Title VII." *Id.* Accordingly, the first of these factors—that is, the extent of the employer's control over the employee—is "the 'most important' consideration in ascertaining the existence of an employer-employee relationship." *Id.* at 703 (quoting *Knight*, 950 F.2d at 378).

The issue of whether an entity is a joint employer is generally unsuitable for resolution at the motion to dismiss stage because it involves "a fact-intensive inquiry that typically requires further development through discovery." *Penteris v. Citgo Petroleum Corp.*, 104 F. Supp. 3d 894, 900 (N.D. Ill. 2015) (applying the five joint-employer factors to determine a putative employer's status in the context of an ADA claim). As such, courts routinely refuse to dismiss Title VII claims at the pleading stage as long as the plaintiff's factual allegations support the theory that the defendant exercised sufficient control over the plaintiff to be her joint employer. *See Thomas v. Coach Outlet Store*, 2017 WL 386656, at *3 (N.D. Ill. 2017) (collecting cases).

13

Defendants argue allegations as to the necessary level of control are absent with respect to GI Partners and Northshore. Defendants say Nor does not allege GI Partners and Northshore exercised control over her hiring, training, assignment practices, day-to-day assignments, pay, or work goals. Rather, Defendants claim Nor seeks to impute this control based on Dr. Alrashid's dual role at the various entities.

In the Complaint, Nor alleges that as CEO of Company A and Interim CEO of Company B, she "was accountable to and jointly employed by each of the individuals or corporate entities that shared ownership, operation, and control of Companies A and B." Dkt. # 1, ¶ 27. Nor further claims her performance evaluations were, in part, completed by the physicians from GI Partners and Northshore, and her most recent bonus check, as part of her overall compensation, was paid by GI Partners. *Id.* ¶¶ 47–48. Nor alleges that Dr. Alrashid, the President of GI Partners and Northshore, "operated and controlled" Company A, Nor's direct employer, and that GI Partners "operated and controlled" Company B, Nor's other direct employer. Nor additionally alleged Dr. Alrashid was one of her supervisors and, in his capacity as President of GI Partners and Northshore, "had control over and directed Plaintiff's employment, from interviewing her for the position, hiring her into the position, supervising her performance, and setting her salary." *Id.* ¶¶ 44–45.

It is true the joint employer concept "is not based on the integration of two companies but instead looks to the control two separate companies exert over the same employee." *Tritsis v. Bankfinancial Corp.*, 2016 WL 3551695, at *2 (N.D. Ill. 2016)

(quoting *Ellsworth v. URS Constr. Servs.*, 2006 WL 2714602, at *4 (ND. Ill. 2006)). But, drawing all reasonable inferences in Nor's favor, we agree Nor's Complaint sufficiently sets forth facts from which it is plausible Defendants can be found to be joint employers for purposes of Nor's Title VII claims. Discovery may prove otherwise, but at this stage, we find Nor's allegations sufficient to meet Rule 8's liberal pleading requirements. Defendants' Motion to Dismiss Nor's Title VII claims based on a lack of an employment relationship is denied.

Defendants' Motion to Dismiss Nor's IHRA claim for lack of an employment relationship is also denied for the same reasons. Moreover, "[u]nder the [IHRA], a retaliation claim does not require an employer/employee relationship between the plaintiff and defendant." *Frey v. Coleman*, 903 F.3d 671, 675 (7th Cir. 2018); 775 ILCS 5/6-101(A).

## C. Count VIII: Interference with Employment Opportunities in Violation of Title VII

Under an interference theory, a plaintiff sues one employer for interfering with his or her employment prospects or relationships with other employers. *Douglas v. Univ. of Chi.*, 619 F. App'x 556, 557 (7th Cir. 2015). The Seventh Circuit has not expressly decided whether an entity that meets the definition of an employer may be held liable under Title VII for discriminatory conduct that interferes with a plaintiff's employment by a different employer. *See Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 493 n.2 (7th Cir. 1996). It has, however, strongly suggested in dicta an

15

unwillingness to recognize such a theory. *See EEOC v. State of Ill.*, 69 F.3d 167, 169 (7th Cir. 1995) ("We think it very doubtful that laws which forbid employers to discriminate creates a blanket liability to employees of *other* employers for interference with *their* employment relationships.") (emphasis in original).

District courts have interpreted the ruling in *EEOC v. Illinois* to preclude any interference theory. *See Kerr v. WGN Cont'l Broad., Co.*, 229 F. Supp. 2d 880, 887 (N.D. Ill. 2002) ("[T]his court concludes that [an interference] theory is unavailable in a Title VII action" because "for a plaintiff whose employment is interfered with by a third party, the remedy is against the direct employer for the discrimination, not the third party"); *Mays v. BNSF Ry. Co.*, 974 F. Supp. 2d 1166, 1173–74 (N.D. Ill. 2013) ("[I]t would not be unreasonable to predict that the Seventh Circuit would definitively reject the interference theory under Title VII if squarely presented with that question."). We agree with these cases and find it doubtful the interference theory is available to Nor if there is no employment relationship between Nor and GI Partners and Northshore.

Nevertheless, we decline to dismiss Count VIII at this time. A more fully developed factual record is necessary to determine the extent (or lack thereof) of an employment relationship between these parties under the unique relationships alleged in the Complaint. *See Brown v. Cook Cnty.*, 2018 WL 3122174, at *7 (N.D. Ill. 2018) ("The issue of whether Dart does, in fact, exercise sufficient control over plaintiffs' employment such that he may be held liable under some version of an interference

16

theory—or simply an indirect employer theory—may be revisited at the summary judgment stage."). Defendants' Motion to Dismiss Count VIII is denied.

### D. Count IX: Negligent Hiring, Retention, and Supervision

Finally, Defendants move to dismiss Count IX, arguing Nor failed to plead and cannot prove proximate cause. Defendants claim the entirety of Nor's negligence claim rests on the singular fact that they knew of Dr. Alrashid's unfitness due to his past license suspension. Nor responds such a claim is a deceptively incomplete portrayal of the Complaint's allegations.

Illinois law recognizes a cause of action against an employer for negligently hiring, or retaining in its employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons. *Van Horne v. Muller*, 185 Ill. 2d 299, 310–10 (1998). "An action for negligent hiring or retention of an employee requires the plaintiff to plead and prove (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury." *Id.* at 311. Under a theory of negligent hiring or retention, the proximate cause of the plaintiff's injury is the employer's negligence in hiring or retaining the employee, rather than the employee's wrongful act. *Id.*

Because "liability arises in this context when a particular unfitness of an employee gives rise to a particular danger of harm to third parties," *id.* at 313, a plaintiff must establish "a sufficient nexus between the particular alleged unfitness of [the employee] and the injury suffered by [the plaintiff]." *Id.* "The particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Id.*

It must be noted that, in Illinois, negligent supervision is a separate and distinct cause of action from negligent hiring and retention. *Doe v. Coe*, 2019 IL 123521, ¶ 55 (citing *Vancura v. Katris*, 238 Ill. 2d 352, 375 (2010)). To plead negligent supervision, a plaintiff must demonstrate that "(1) the defendant had a duty to supervise the harming party, (2) the defendant negligently supervised the harming party, and (3) such negligence proximately caused the plaintiff's injuries." *Id.* ¶ 52. The duty is a general one, and the extent of supervision required "depends on many factors, such as the work performed, the employees performing it, the size of the business, the type of work, and the employer's clientele, among others." *Id.* ¶ 58. Prior notice of an employee's particular unfitness is not required in this context; rather, "only general foreseeability is required." *Id.* ¶ 61.

Defendants argue they can evade liability by claiming Dr. Alrashid was not acting within the scope of his employment, for sexual misconduct is outside the scope of employment. However, "an employer may be liable even though the employee commits the criminal or intentional act outside the cope of employment, liability from

18

out-of-the-scope acts will only rest where the employee is on the employer's premises or using the chattel of the employer, and the employer has reason to know of the need and opportunity for exercising control over the employee." *O'Rourke v. McIlvaine*, 2014 IL App (2d) 131191, ¶ 17 (cleaned up). Defendants say, at best, the Complaint can be read to suggest Dr. Alrashid's employment provided a condition for the parties to meet, but the injury did not result "because of" that employment.

Nor responds that it can be reasonably inferred Dr. Alrashid was using a company car at the time of the alleged assault, and further notes that employer liability attaches not only from an employee's abuse of the employer's chattel but also from a tortious abuse of supervisor authority over another. *See Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 651 (7th Cir. 2017).

Here, Nor alleges Defendants knew of Dr. Alrashid's particular unfitness—that is, his history of sexual misconduct and license suspension—at the time of hiring. She further claims Dr. Alrashid committed similar acts of sexual misconduct against employees of Northshore and GI Partners and, despite reports of that misconduct, Defendants did nothing. Nor says Dr. Alrashid went on to sexually assault her, causing her injury, resulting from Defendants' failure to act. According to Nor, the harm to her was foreseeable given that it was the "continuum of [Dr.] Alrashid's pattern of sexual misconduct against female colleagues, of which Defendants were aware." Dkt. # 65, at 18. These allegations are sufficient to satisfy Rule 8's liberal pleading standards for

claims of negligent hiring and retention, and negligent supervision. Defendants'
Motion to Dismiss Count VIII is denied.

### III. Dr. Alrashid's Supplemental Motion to Dismiss

Dr. Alrashid argues Nor's Complaint against him must be dismissed because this
Court lacks subject matter jurisdiction over Nor's state law causes of action against Dr.
Alrashid. In the Complaint, Nor asserts this Court has federal question jurisdiction
because she brings Title VII claims against GI Partners and Northshore. Since the Title
VII claims cannot be brought against Dr. Alrashid in his individual capacity, Dr.
Alrashid contends Nor is attempting to exercise impermissible pendent party
jurisdiction against him.

In the Complaint, Nor expressly invokes supplemental jurisdiction under 28
U.S.C. § 1367(a). Section 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district courts
> have original jurisdiction, the district courts shall have supplemental
> jurisdiction over *all other claims that are so related to claims in the action
> within such original jurisdiction that they form part of the same case or
> controversy* under Article III of the United States Constitution. Such
> supplemental jurisdiction shall include claims that involve the joinder or
> intervention of additional parties.

28 U.S.C.A. § 1367(a) (emphasis added). "The state and federal claims must derive
from a common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs*, 383
U.S. 715, 725 (1966), although "[a] loose factual connection between the claims is
generally sufficient," *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995).

20

Here, the claims against Dr. Alrashid include assault, battery, and violations of the IGVA and IHRA. The claims against GI Partners and Northshore include violations of the IGVA, the IHRA, and Title VII, as well as a claim for negligent hiring, retention, and supervision. In *Ammerman*, the plaintiff alleged a Title VII sexual harassment claim and state law claims for assault and battery. 54 F.3d at 424–25. The court held that the claims arose from a common nucleus of operative facts because the employer had a duty to take reasonable steps to discover and rectify sexual harassment, and reasonableness depends on the "gravity of the harassment." *Id.* at 425. As the court stated, "[W]ithout reference to the facts surrounding the assault, there could have been no sexual harassment claim against the employer." *Id.* The same is true here: if the assault and battery alleged occurred, that could be the catalyst for the negative conduct alleged in the other counts. *See Freelain v. Vill. of Oak Park*, 2014 WL 148739, at *10 (N.D. Ill. 2014). "In other words, without the assault and battery, which led to [Nor's] complaint about it, there might not have been any animus against [Nor]." *Id.*

*Quela v. Payco–General American Credits, Inc.*, is also helpful. 84 F. Supp. 2d 956, 960 (N.D. Ill. 2000). The plaintiff in *Quela* alleged that "because he prepared and presented a statement regarding the hostile work environment to management, he was subjected to physical threats, intimidation and verbal abuse from his manager[.]" *Id.* at 960–61 (internal quotation marks omitted). Accordingly, the court exercised supplemental jurisdiction over state law assault and battery claims because they essentially formed the basis for the Title VII retaliation claim. *Id.* And the same

21

situation is presented here. Like in *Quela*, what occurred between Nor and Dr. Alrashid, and Nor's complaints to her employers, is highly relevant to the claims against GI Partners and Northshore. *Freelain*, 2014 WL 148739, at *10.

The claims against Dr. Alrashid and the claims against GI Partners and Northshore unquestionably derive from a common nucleus of operative fact, and the Court will exercise supplemental jurisdiction over them accordingly.[3] Dr. Alrashid's Motion to Dismiss is denied.

## **CONCLUSION**

For the reasons mentioned above, the Court denies Defendants GI Partners and Northshore's Motion to Dismiss [34] and denies Dr. Alrashid's Supplemental Motion to Dismiss [46].

It is so ordered.

Dated: 3/17/2022

_____
Charles P. Kocoras
United States District Judge

---

[3] Dr. Rashid also urges the Court to decline to exercise supplemental jurisdiction because "complex state law claims predominate." Dr. Alrashid did not raise this argument in his opening brief, and, in any event, the Court rejects this argument.