UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHRYN NOR,<br><br>    Plaintiff,<br><br>    v.<br><br>ARKAN ALRASHID, M.D., GI PARTNERS OF ILLINOIS, LLC, and NORTHSHORE CENTER FOR GASTROENTEROLOGY,<br><br>    Defendants. | Case No. 1:20-CV-07470<br><br>Judge Charles P. Kocoras<br><br>Magistrate Judge Young B. Kim |

**DEFENDANT ARKAN ALRASHID'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL DISCOVERY FROM PLAINTIFF KATHRYN NOR**


Dated: December 27, 2022

Respectfully Submitted,

/s/ Brenna M. Woodley

Ronald S. Safer
Brenna Woodley
Noreen Cull
Riley Safer Holmes & Cancila LLP
Three First National Plaza
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
Tel.: 312-471-8700
Fax: 312-471-8701
rsafer@rshc-law.com
bwoodley@rshc-law.com
ncull@rshc-law.com

*Attorneys for Defendant Arkan Alrashid*

Defendant Arkan Alrashid ("Alrashid") respectfully submits this Memorandum in Support of his Motion to Compel Discovery from Plaintiff Kathryn Nor ("Nor"). The relevant background facts, history of the parties' communications, and Alrashid's compliance with LR 37.2 is set forth in the Motion to Compel and incorporated by reference herein. Motion ¶¶ 1-23.

## ARGUMENT

I. **Legal Standard for Motion to Compel**

"A party may pursue a motion to compel under Federal Rule of Civil Procedure ["FRCP"] 37 when the opposing party fails to respond to a discovery request or when the opposing party's response is insufficient." *Hansen v. Country Mut. Ins. Co.*, 2020 WL 5763588, at *1-2 (N.D. Ill. Sept. 28, 2020). "Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules." *Id*. A motion to compel should be granted where the information sought is relevant and proportional to the needs of the case. *Motorola Sols., Inc. v. Hytera Comms. Corp.,* 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Once the moving party has made a preliminary showing that "the discovery it seeks is relevant to the case and proportional to the needs of the party . . . [t]he party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Hansen*, 2020 WL 5763588, at *2. The discovery Alrashid seeks is relevant and proportional, and Nor has not demonstrated that the discovery should be disallowed.

II. **Non-Compliance with Requirements of FRCP 33 and 34.**

***Prohibited General Objections***. Nor's written responses contain "General Objections," which are improper under the Federal Rules. Ex. 3, 4. General Objections 2 and 3 together purport to assert eight rote objections - relevance, overbroad time period, overbroad subject matter, attorney-client privilege, work product doctrine, psychotherapist-patient privilege, physician-patient privilege, and the Court's September 30, 2021 stay order. Ex. 3. General Objections 4, 5, and 6 in Nor's answers raise additional rote objections. *Id.* Nor contends that *each* rote objection

1

is being raised in response to *every* interrogatory and RFP.[1] Under the Rules, the grounds for objecting to an interrogatory or RFP must be stated with specificity. FRCP 33(b)(4); FRCP 34 (Committee Notes to 2015 Amendment). Alrashid's counsel advised Nor's counsel that they would address *only* the objections contained in her responses to specific discovery requests and asked counsel to identify which general objections were being asserted for each request. Ex. 7 pp. 2-3. Counsel failed to respond, thereby forfeiting the General Objections. *See, e.g.*, *Kelley v. Bd. of Educ. of City of Chicago*, 2012 WL 1108135, at *2 (N.D. Ill. Apr. 2, 2012) (*ipse dixit* recitation of boilerplate objections improper); *Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) (boilerplate objections "tantamount to not making any objection at all"); *United Auto Ins. v. Veluchamy*, 2010 WL 749980, at *5 (N.D. Ill. Mar. 4, 2010) (improper objections are waived); *Fralish v. Digital Media Sols., Inc.*, 2021 WL 5370104, at *4 (N.D. Ind. Nov. 17, 2021) (general objections placed in a separate section or repeated by rote in response to each requested category are not objections and will not be considered.).

***Failure to Disclose Withheld Documents***. Where Nor raised specific objections to a request, she did not say whether she withheld responsive information based on an objection. A party raising an objection "must state whether any responsive materials are being withheld on the basis of that objection." FRCP 34(b)(2)(C); *Barnes-Staples v. Murphy*, 2021 WL 1426875, * 10 (N.D. Ill. Apr. 15, 2021) (discussing lack of transparency in party's objections and ordering party to amend responses). As to certain responses, as set forth herein, Alrashid's counsel had been able to determine from information produced by SCA or Nor's other records that Nor has withheld documents. However, for most responses, Nor's lack of transparency makes it impossible to

---

[1] The General Objections are a mixture of objections and restatements of the FRCP. Alrashid opposes *only* the objections. Alrashid does not oppose the parts of the General Objections that restate Rules. Alrashid reserved the right to address any general objection the Court concludes was not forfeited. Ex. 7 p. 3.

2

determine whether she has documents that have not been produced, which is highly prejudicial to Alrashid. Alrashid's counsel raised this issue in writing and at the discovery conference. Ex. 5, 7. Nor's counsel agreed to supplement certain responses to state where information was withheld by December 30. Responses Nor agreed to supplement are noted in the Motion.[2] Responses Nor would not supplement or for which the parties reached impasse are addressed below.

### III. Specific Discovery Requests in Dispute.

*RFPs 4 and 5*. RFPs 4 and 5 seek information regarding Nor's income. The time period is from 2017 (the year she started at SCA) to the present. RFP 4 seeks Nor's tax returns and other documents reflecting income, including from SCA. Ex. 4 p. 3. RFP 5 seeks documents relating to income or benefits Nor received other than from employment at SCA. *Id.* Nor objected that the RFPs are "overly broad and unduly burdensome in temporal and subject matter scope." *Id*. The time period objection has no merit. The time period does not predate Nor's job at SCA and Nor claims economic damages from through the present. Ex. 4 p. 5-6. ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."). The "subject matter scope" objection (which appears to be a relevance objection) also lacks merit. Nor appears to argue that all income received is "collateral source" income and therefore there can be no discovery of this income. Ex. 4 p. 3. The collateral source rule, however, is an evidentiary rule addressing the admissibility of evidence that extends to insurance policies and related payors. *Noonan v. Harrington*, 740 F. Supp. 2d 970, 977, FN 1 (C.D. Ill. 2010) (citing Restatement (Second) of Torts § 920A cmt. C). The rule is

---

[2] Alrashid has not moved to compel on these requests, because at this time Nor has not yet disclosed whether she is withholding material she refuses to produce (as opposed to not having responsive material). If, on December 30, she discloses that she has withheld information in her supplement, Alrashid may have to address these issues in subsequent motion practice.

3

inapposite. Plaintiff has not provided any authority to support that the collateral source rule bars *discovery* regarding offsets to damages. Moreover, it is sheer fiction to suggest that the reason SCA paid Nor is because it was an insurer or indemnifier required to cover losses caused by Alrashid. The undisputed evidence, which Nor does not and cannot contest, is that Nor filed a charge of discrimination against *SCA* alleging that *SCA* retaliated against her.

Nor contends that other income is irrelevant to her damages in this case, but this is belied by her careful omission *of any* reference to the settlement in any of her discovery responses. For example, Nor produced her W-2s for 2017 through 2021 except for one: the **2020 W-2 from SCA that would reflect the wage portion of the settlement.** She also has refused to produce **tax returns and 1099s that would reflect a non-wage/emotional distress component of the settlement**.³ The relevance is plain: Nor cannot recover for periods for which she has no losses. *Cianci v. Pettibone Corp.,* 152 F.3d 723, 728-29 (7th Cir. 1998) (no recover where plaintiff suffered no loss of income). Contrary to her conclusory statement that she has continuing lost wages (Ex. 3 pp. 5-6) there is a question as to whether Nor has *any* losses at all. From what can be surmised from the SCA records, Nor continued ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. SCA008-032. SCA also paid her ▮▮▮▮▮▮▮▮ pursuant to the settlement of her claim against SCA in March 2020 (when her employment ended). SCA005-007. Nor had at least ▮▮▮▮▮▮▮▮ from SCA in 2020 -- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ while working there. *Id.*; Ex. 3 p. 5. When this is added to her other 2020 wages, her wage earnings increase to $▮▮▮▮▮. *Id.*⁴ On top of this, Nor also likely recovered emotional distress damages as part of the settlement of the retaliation claim. This also is relevant to her claim against Alrashid.

---

³ Nor's counsel agreed that Nor would look for the 2020 W-2, information that would be easy to find because it is part of the tax records, but it has not been produced.
⁴ SCA005-006. In addition to the marked increase in earnings in 2020, since August 2020, Nor reports that her ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ than they were at SCA. Ex. 3 pp. 5, 8.

*Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 639 (7th Cir. 2011) (double recovery for the same injury not allowed) *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018) (same). Such information would be in the tax returns, W-2, and 1099s she has not produced.[5] Alrashid is entitled to this discovery to evaluate his defenses. The Motion should be granted as to RFPs 4-5.

    **RFP 9**. RFP 9 asks for documents concerning any agreement between Nor and SCA. Ex. 4 p. 5. Nor objected, including based on "privilege" and "confidentiality" and referred Alrashid to unidentified SCA records. *Id*. (Aside from the pay record reflecting the wage component of the settlement, SCA's documents subpoenaed by Alrashid do not contain responsive material.) Nor did not state that she was withholding documents, FRCP 34(b)(2)(C), but since SCA disclosed the settlement Nor's counsel acknowledged she has responsive records (without disclosing what they are). In any event, the previously raised privilege and confidentiality objections have no merit.

    An unsupported assertion of privilege is not enough; rather, a party asserting privilege must "describe the nature of the documents . . in a manner that [] will enable other parties to assess the claim." FRCP 26(5)(A)(ii). Nor did not provide a privilege log or provide any information in the communications between the parties to show what might be privileged. *See Rao v. Bd. of Trustees of the Univ. of Illinois*, 2016 WL 6124436, at *6 (N.D. Ill. Oct. 20, 2016) ("party seeking to maintain protection on the basis of [] privilege must meet its burden of showing that the documents in question deserved protection" and "the failure to serve an adequate and timely privilege log may result in waiver of any protection from discovery") (citing *The Manitowoc Co., Inc. v. Kachmer*,

---

[5] In addition to the relevance of the settlement proceeds, Nor has opened a business since her separation from SCA. Ex. 3 p. 9. She denies that she performed work or received any income from her business, but this also would be confirmed by documents showing 1099 income. If she were unavailable for employment due to be self-employed or running a business, this also would be relevant to lost wages.

5

2016 WL 2644857, at *4 n.4 (N.D. Ill. May 10, 2016)). Also, while certain communications between Nor and her counsel may be privileged, other documents clearly would not be privileged, including communications and documents exchanged between Nor and SCA. *See, e.g.*, *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479-80 (N.D. Ill. 2002) (voluntary disclosure of work product to an adverse party waives protection). The confidentiality objection is meritless, too. Any confidentiality concerns are mitigated by the Confidentiality Order, under which Nor can designate documents (which again, she has made no effort to identify) as Confidential or Attorneys Eyes Only. ECF 112 ¶ 8 ("no party may withhold information from discovery on the grounds that it requires protection greater than afforded by this Order"). There is no reason an Attorneys Eyes Only designation would not be sufficient. Further, SCA already produced a document reflecting the settlement, suggesting no absolute bar on disclosure.

Also, confidentiality concerns are outweighed here by the probative value of the information. These documents may contain admissions and facts about who made the decisions regarding Nor's demands to return to work and be transferred to another job (*i.e.*, the retaliatory acts) and payments Nor received, and therefore go to liability and damages. Compl. ¶¶ 72-76 (alleging same acts of retaliation by Alrashid as alleged against SCA). Such documents also may be relevant to whether Alrashid was a "joint employer" who participated in these decisions. Alrashid was not involved in the communications between Nor and SCA, and he should not have to compel a third party to produce records Nor possesses. The failure to disclose what was withheld or make a showing of why it cannot be produced appears to be part of a pattern of not producing information that may defeat joint employment (the sole basis for federal jurisdiction) or damages.[6] Given the importance of this information, the Motion should be granted as to RFP 9.

---

[6] Nor aggressively pursued discovery regarding her joint employment theory, propounding dozens of discovery requests to each defendant regarding who controlled various elements of Nor's employment, but

6

***Interrogatories 4-6.*** These requests also ask for information about damages.[7] Nor objected and provided the same conclusory answer as for each request. Ex. 3 pp. 5-7. Her counsel agreed to supplement this answer but also stated that Nor would not agree to provide the SCA settlement details. Because the sworn answer is incomplete and misleading Alrashid has moved to compel.

Aside from stating her salary and compensation at SCA, Nor did not provide the requested facts (including dates and amounts) from which to understand her damages. For lost wages she answered that she "has lost and will continue to lose wages" and "will seek the full value of her compensation and benefits lost and full value of compensation and benefits she will lose through trial." Ex. 3 pp. 5-6. The answer does not mention the settlement, much less explain how Nor is not precluded from recovering back and front pay from Alrashid. *Id.* Her answer for emotional distress damages is similarly vague and devoid of specific facts. *Id.* p. 6 (the "emotional distress from these events is continuous and ongoing" and "as a ▮▮▮▮▮ . . . ▮▮▮▮▮"). This vague answer implies that Nor incurred damages attributable to Alrashid in June 2022.

However, she produced records a month after giving this sworn answer casting doubt on the accuracy of this statement. Based on the records, Nor applied for and received ▮▮▮▮▮ in June 2022 and was paid for the weeks between June 27 and July 17, 2022, at about the time she sought an extension on her discovery for medical reasons. Ex. 12; ECF 144, 147. However, it appears that Nor ▮▮▮▮▮ and believed ▮▮▮▮▮. NOR1119-20, 1130-31. Between July 4 and July 19,

---

she has produced no documents showing that Alrashid was her employer and has failed to state whether she has documents relating to joint employment in her possession.
[7] Interrogatory 4 asks Nor to identify her economic losses, Interrogatory 5 asks for information about any emotional, mental, or other forms of distress caused by Alrashid, and Interrogatory 6 asks for any periods of time when Nor was unavailable to work or earn wages. Ex. 3 p. 3-4.

2022, Nor ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. NOR0961-1076. Thereafter, it appears that Nor went on vacation on July 24, 2022 after securing new employment. NOR1119-20, 1145. (Not only do these statements and records appear inconsistent with her answer (since the absence is unrelated to Alrashid), but they also appear inconsistent with her representations to the Court that she was "in the hospital" and incapacitated and unable to assist her counsel with discovery on or after June 27, 2022. ECF 14 ("Plaintiff's counsel has just learned this afternoon, June 27, 2022, that Plaintiff's medical event is on-going and that she continues to receive in-patient care. Further, Plaintiff's counsel was informed that Plaintiff's prognosis is uncertain and that the course and extent of the medical care she requires is currently unknown but that her treatment is expected to last several weeks.").

The objections to disclosing dates and other specific facts have no merit. Ex. 3 p. 5. The requests are limited to the period for which Nor is claiming she has damages and not overbroad. *Id.* Nor is it unduly burdensome to answer interrogatories about the basis for damages. *Id.* Interrogatories often are used to identify the *factual* basis for damages. *See, e.g.*, *Ziemak v. Centel Corp.*, 1995 WL 729295, *3 (N.D. Ill., Dec. 7 1995) (granting motion to compel responses to damages interrogatories and reasoning that, "although expert may be necessary to refine evidence of losses, plaintiffs must have had some factual basis for concluding that they sustained losses at the time they filed the complaint"). Nor could have identified records containing the responsive facts as an alternative or addition to her written answer. FRCP 33(d). And while she may not know every fact on which she will rely to prove damages, she clearly has facts related to her damages

that she has not provided. FRCP 26(e) (duty to timely supplement).[8] Alrashid is entitled to know the facts on which Nor bases her damages claims against him. The Court should order Nor to supplement her sworn answers with the amounts and dates of her losses.

**_RFP 32_**. RFP 32 seeks documents relating to emotional distress treatment. It is related to Interrogatory 3, which asks for treatment providers and dates of treatment. For Interrogatory 3, Nor disclosed Maria Miller ( who treated her for emotional distress), Shauna Richardson ( and provided other treatment for emotional distress), and Diana David (M.D.) as providers. Nor gave dates for treatment with David, who she saw four times in 2019 immediately after the assault, but not for Miller or Richardson. Ex. 3 p. 4. She produced no records for Miller and a subset of records for Richardson. The information is relevant to the assessment of damages and should be provided.[9]

In her response served on August 12, 2022, Nor responded that her "investigation continues" as "Nor continues to gather and review the responsive medical records and will produce the same when complete." Nor eventually produced records on September 13, 2022. However, she produced **_no treatment records from Miller_**. The Richardson records also are relevant and incomplete – on September 13, 2022, Nor produced records for treatment with Richardson through

---

[8]Nor's relevance objection to Interrogatory 6 also has no merit. Ex. 3 p. 8. If Nor had an extended period where she was not available for employment (due to operating her new business or otherwise), such facts are relevant to whether she has lost wages for that period of time.

[9] Nor objected to RFP 32 as calling for information as to which discovery is stayed. Ex. 4 p. 13. The stay on written discovery is limited to "written discovery directed to Nor as to the events of February 12-13, 2019." ECF 29. It *does not* prohibit discovery regarding emotional distress. To the extent certain records may discuss the details of the assault, the parties can discuss redactions, but there is no reason for a blanket refusal to produce. Nor *did not* raise a patient privilege in response to either Int. 3 or RPF 32. Even if she had raised this objection, she waived the privilege by putting her emotional and physical health at issue. Therefore, such privilege would not be a basis for not producing records in this case. *See Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 516-17 (N.D. Ill. 2018) (plaintiff who claimed emotional distress damages waived psychotherapist-patient privilege and records were relevant under FRCP 26).

9

June 2, 2022. While she also produced a handful of emails with Richardson from July 2022 in which Nor discussed █████████████████████████████, she **produced no treatment records after June 2**. Nor's counsel agreed to supplement the production for Richardson's records but, as to Miller, counsel provided no information about which records were destroyed in the flood or whether any records might exist. Also, counsel offered to "seasonably" supplement these records (which clearly has not happened as to any of these providers) but did not confirm they would produce Miller records by December 30. *Cummings v. Dart*, 2022 WL 461987, at *2 (duty to supplement "is an important component of the discovery process").

The only document reflecting treatment by Miller is a letter from Miller saying she treated Nor and that Nor's treatment records were lost "secondary to flooding." NOR1114. The letter, which is not on letterhead and has no date, address, or addressee, states the Miller provided th██ to Nor on a monthly to bimonthly basis for emotional distress related to the assault other events, ████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* However, it provides no details about the loss of records, state the time period covered by the lost records, or whether any records exist. *Id.* SCA's records show that Miller was involved in the events underlying the retaliation claim - SCA received letters from Miller ██████████████████████████████████████████████████████████████████. Ex. 11. In addition to what her counsel has agreed to provide, the Court should order Nor to produce any treatment records from Miller and identify the time period covered by the lost records and when they were lost.

**<u>Interrogatories 18, 19, 21; RFPs 17, 26, 27</u>.** Interrogatories 18, 19, and 21 ask Nor to identify people with whom she (or anyone acting on her behalf) communicated about her retaliation allegations. Ex. 3 pp. 14-15. Specifically, they ask for the identity of anyone with whom

10

Nor had "*conversations or other communications*" regarding the facts surrounding her retaliation claim, including the allegations that Alrashid refused to permit her to return to work and refused to promote her to another job, effectively terminating her employment. Compl. ¶¶ 74-76. RFPs 17, 26, and 27 relatedly ask for all documents that support, contradict, relate to or concern in any way the retaliation allegations. Ex. 4 pp. 8, 11-12. This also encompasses communications between Nor and her counsel with SCA or other witnesses regarding the retaliation allegations.

Nor objected to the interrogatories as too burdensome because they "ask plaintiff to recall all communications over a lengthy period of time," and "on the basis of attorney client and work product privileges." Ex. 3 pp. 14-15. Subject to the objections, she identified who "at this time" she recalls having "*conversations*" with. *Id.* However, she did not answer as to *communication* other than conversations (including texts, emails, messaging, and social media posts). She further answered that "her counsel has engaged in *communications* on her behalf and that some of those *communications* may have taken place while she remained employed with Defendants," but she failed to identify who her counsel communicated with. *Id.* At the discovery conference counsel agreed to supplement the answers to provide the other *communications* Nor had (or to confirm she had no other communications) by December 30 but refused to disclose who counsel communicated with on the grounds that the identity of the individuals is counsel's work product.[10]

This argument has no merit. First, the work product doctrine applies to "documents" and "tangible thing" with counsel's mental impressions. FRCP 26(b)(3). It does not shield the underlying facts from disclosure. *See U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 546 (N.D. Ill. 2005) ("Rule 26(b)(3), while it prohibits discovery of protected documents,

---

[10] Interrogatory 20 also asks for people Nor communicated with about retaliation. Nor refused to answer because Alrashid's counsel erroneously cited to Paragraph 76 of the Complaint instead of Paragraph 74. Ex. 3 p. 15. Nor has agreed to provide an answer. Alrashid therefore has not moved to compel an answer to Interrogatory 20, though the same arguments apply if Nor gives the same answer.

11

does not prohibit disclosure of the underlying facts."); *Eagle Compressors*, 206 F.R.D. at 478 ("Factual information may not be withheld under the work product doctrine, but must be produced through interrogatories, depositions, or other discovery."). "In no event, however, does the immunity attach to underlying facts, even those facts that only become known through the hard work of counsel." *Flomo v. Bridgestone Americas Holding, Inc.*, 2010 WL 2484266, at *2 (S.D. Ind. June 14, 2010). Nor did not provide authority supporting her position during discussions.

Moreover, Nor notably *did not* assert the privilege in response to RFPs 17, 26, and 27, which call for documents relating to the retaliation allegations. These RFPs and encompass the very communications for which Nor refused to disclose witnesses in response to Interrogatories 18, 19, and 21 but Nor raised no privilege objection here, nor did she indicate she was withholding documents based on a privilege. Ex. 4 p. 8, 11-12. She also did not produce a privilege log. *See Rao,* 2016 WL 6124436, at *6 (party seeking privilege protection has burden to show information is privileged and failure to provide a log can be a forfeiture or waiver of privilege). However, the documents she produced suggest that, in fact, Nor withheld communications she produced certain communications with SCA about Nor's demands to return to work and for a new job (none of which included Alrashid.) but no responses. Ex. 13. She also produced emails Michelle Virginelli (who is not disclosed in Nor's Rule 26(a)(1) disclosures) sent to SCA about Nor's leave. Ex. 14. Significantly, of the 55 pages of emails between Nor and SCA produced by SCA discussing Nor's job performance (and work and the handful produced by Nor herself), Alrashid does not appear as a recipient or sender on any of them. **The only emails on which his name appears are those sent by Virginelli**. *Id.* The fact that Nor and her counsel are not on the distribution list suggests that they had other communications with Virginelli or others and might have been in these communications. (What they produced also is inexplicably redacted.) *Id*. The Court should order

12

Nor to provide amended answers to Interrogatories 18, 19, 21 (and 20 in the event Nor similarly refuses to answer) with the names of individuals with whom she and/or her attorney *communicated* (in any manner) about the allegations set for in the interrogatories. Also, while counsel has agreed to supplement the RFP responses, they have agreed only to state whether they had withheld documents. That is not enough. The communications must be disclosed and the documents, produced because there is no basis for withholding them. *See* FRCP 26(e)(1); FRCP 34(b)(2)(C); *Cummings v. Dart*, 2022 WL 461987, *2 (N.D. Ill. Feb. 15, 2022) ("Parties who do not attend diligently to their obligation to supplement initial disclosures proceed at their own peril.").

**RFPs 37, 38, and 39**. These RFPs ask for communications between Nor (or anyone acting on her behalf) and Amanda Galster and Elizabeth McInerney (potential Rule 404(b) witnesses in the Criminal Proceeding) or anyone acting on their behalf (RFPs 37 and 38) and documents Nor exchanged with Galster or McInerney (RFP 39). Nor objected to producing documents responsive to RFPs 37 and 38 on the grounds that the information was overbroad, unduly burdensome, not relevant, and protected by the attorney-client privilege and work product doctrine. Ex. 4 pp. 15-16. She also objected to producing records in response to RFP 39 on the grounds that the information was overbroad, unduly burdensome, and not relevant. *Id.* p. 16.[11] Nor produced no documents but indicated that her "investigation continued" and she would produce what she deemed "relevant." *Id.* She did not produce records in response to counsel's correspondence or the Court's order requiring supplements. Ex. 5; ECF 166. Three months later, Nor produced ***500 pages*** of text messages between Galster and McInerney about her allegations in this case not previously

---

[11] Nor took the position that her communications with these witnesses was overbroad, unduly burdensome, and irrelevant without explanation and despite the fact that Nor served and aggressively pursued discovery from Alrashid and the co-defendants regarding Galster's and McInerney's allegations. *See, e.g.*, Nor's RFPs 7-8 and Int. 9-10 to Alrashid. This is another example of where her position in pursuing discovery is inconsistent with her position in responding to discovery, without explanation.

13

disclosed. Ex. 6. (Among them are texts discussing deleting text messages.) She also produced a privilege log disclosing other documents not previously disclosed consisting of communications between Nor's counsel and Galster's counsel. She raised *for the first time* a "common interest" privilege with respect to communications, though no such privilege was raised in any of Nor's written discovery response. These documents appear responsive to RFPs 37-39, though Nor did not amend her responses to reflect this. [12]

Nor also has not provided any authority to support that a "common interest" privilege exits with Galster's counsel despite requests from counsel. Ex. 15. It is not applicable. First, Nor never raised the common interest privilege or produced a privilege log in her August 12, 2022 responses to the RFPs. Instead, she withheld from production hundreds of pages of communications between the lawyers and plaintiffs without disclosing this fact, as she has done in other responses. When she finally did raise it on November 16, the privilege log provided does not provide sufficient information to establish that the protection applies. For each communication with Galster's counsel, Nor states only that "litigation against Alrashid" was discussed or "documents" sent, without further elaboration. *Id*. She does not even disclose what case was discussed. For these reasons, the Court should find that she forfeited this protection. [13] Second, even if she had properly raised it, the doctrine does not apply. "[F]or the doctrine to apply, the person with whom the privileged information is shared must have an *identical* – not merely similar – *legal* interest in the subject matter of the communication, which must be made in the course of furthering the ongoing, common enterprise." *McCullough v. Fraternal Order of Police, Chi. Lodge* 7, 304 F.R.D. 232,

---

[12] Despite her insistence that Alrashid amend his written responses to identify by Bates number each responsive document produced in a supplemental production, *see, e.g.*, ECF 137, 150, 158. Nor has not done so for any documents in her September 13 and November 16 productions.

[13] *See RTC Indus., Inc. v. Fasteners Retail, Inc.*, 2019 WL 5003681, *12 (N.D. Ill. Oct. 8, 2019) (denying protection for emails where the description does not demonstrate there was anything otherwise privileged about the communication);

14

239 (N.D. Ill. 2014) (emphasis in original). In *McCullough*, the court held the common interest privilege was *inapplicable* where two co-workers had separate cases of sexual harassment and discrimination against the same employer. *Id.* at 240-41. The court concluded that while the plaintiffs "no doubt had a common interest in seeing the [defendant] punished for what they perceived to be the wrongs each of them allegedly suffered," that did not constitute "the required identical legal interest" for the doctrine to apply. *Id.; Rao,* 2016 WL 6124436, at *6 (stating the court has found no case that bends the common interest doctrine to such an extreme definition that it applies to plaintiffs' mere interest in prevailing).

Galster and Nor do not share an identical legal interest. Galster did not work at SCA or with Nor and the sole claim in her case (an IGVA claim) alleges acts of gender violence dating back to 2014, years before Nor worked for SCA or was assigned to Winchester. Galster contends that she met Nor for coffee at Nor's suggestion in early 2019, and she made a report against Alrashid to the police after that. After doing so, Galster sent Alrashid messages (produced in this case) in which she asked him for a job and told him she was "helping" him in the investigation against him. No charges were filed based on her allegations, and documents recently received from the Lake County State Attorneys' Office in the Galster case show that the police gave Galster a Miranda warning when interviewing her about her inconsistent statements. A shared desire to punish Alrashid is not enough. Additionally, here there is the added consideration of the Criminal Proceeding and the fact Galster at this time still is a potential witness in that proceeding. The Court should consider the potential for taint of the criminal matter (and collusion in the civil cases) if Nor and Galster are found to have a common interest that shields their communications. For all of these reasons, the privilege protections should be denied and Nor should be ordered to produce her counsel's communications with Galster counsel and with Galster and McInerney directly.

15

## **CONCLUSION**

For the reasons stated above, Alrashid respectfully requests all relief requested in its accompanying Motion to Compel.